**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

CYNTHIA DYCHES LINTHICUM and )
CHRISTOPHER MARTIN LINTHICUM, )
as natural parents of T.L., )
deceased, and assignees of )
Bobby James Hopkins, II, )
                                   )
    Plaintiffs, )
                                   )
v.                             )     CASE NO. CV415-023
                                   )
MENDAKOTA INSURANCE COMPANY, )
                                   )
    Defendant. )
                                   )

## O R D E R

Before the Court are Defendant Mendakota Insurance

Company's Motion for Summary Judgment (Doc. 49), and

Plaintiffs Cynthia and Christopher Linthicum's Motion for

Partial Summary Judgment (Doc. 51). For the following

reasons, Defendant's motion is **GRANTED** and Plaintiffs'

motion is **DENIED**. The Clerk of Court is **DIRECTED** to close

this case.

## BACKGROUND

On June 3, 2008, Plaintiffs' son was tragically killed

after being struck by a vehicle driven by Bobby Hopkins.[1]

---

[1] The material facts of this case are not in dispute. Where
they conflict, however, the Court has taken the facts in

(Doc. 51 at 2.) Plaintiffs' son survived for approximately one hour following the collision. (Doc. 49, Attach. 1 at 3.) Mr. Hopkins fled from the scene of the accident and was later charged with driving under the influence. (Id.) At the time, Mr. Hopkins was covered under an automobile liability policy issued by Defendant. (Doc. 51 at 2.) The policy carried a limit of $25,000. (Id.)

On July 15, 2008, Defendant received notification that Plaintiffs were represented by counsel. (Doc. 49, Attach. 1 at 3.) Ten days later, Defendant informed Plaintiffs' counsel that it would most likely offer the policy limits to settle any claims against Mr. Hopkins. (Id.) Plaintiffs' counsel informed Defendant that he was still evaluating his clients' options and was unprepared to accept the policy limits at that time. (Id.) Plaintiffs' counsel did state that he would eventually send a demand for the policy limits, but wanted to wait until the resolution of Mr. Hopkins's criminal charges. (Doc. 51 at 3.)

On October 9, 2008, Defendant sent Plaintiffs' counsel a written settlement offer, which offered the policy limits

the light most favorable to Plaintiff. Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005).

and required that the funds be paid to the estate of Plaintiffs' son. (Id. at 4.) According to Plaintiffs, Defendant mistakenly believed that Georgia law required payment to the estate rather than directly to Plaintiffs. (Id.) Plaintiffs did not expressly respond to that settlement offer, electing to simply provide a copy of the death certificate and express a general "hope to be able to proceed with these files in the near future." (Doc. 45, Attach. 9 at 1; accord Doc. 51 at 5.)

On May 12, 2010, approximately nineteen months after Defendant offered the policy limits, Plaintiffs faxed Defendant a demand letter for the policy limits in exchange for a release "of all claims for the wrongful death of [T.L.]." (Doc. 51, Ex. B-2 at 3 (emphasis added).) The demand was time-limited and would be withdrawn if not accepted in writing by 5:00 p.m. on May 24, 2010. (Id. at 5-6.) Plaintiffs did not contact Defendant to inquire as to whether it received or intended to respond to the demand. (Doc. 49, Attach. 1 at 6.) Defendant did not timely respond to Plaintiffs' demand. On June 2, 2010, Plaintiffs filed a

3

wrongful death suit against Mr. Hopkins and provided a copy of their complaint to Defendant. (Doc. 51 at 7.)

On June 15, 2010, Defendant contacted Plaintiffs' counsel and reminded him that Defendant had previously tendered the policy limits to settle Plaintiffs' claims against Mr. Hopkins. (Doc. 49, Attach. 1 at 6.) Defendant once again extended the same offer to settle those claims, including the requirements that Plaintiffs agree to release all of the personal injury claims against Mr. Hopkins and that payment be made to the victim's estate. (Doc. 51 at 7.) Rather than accept the policy limits under those conditions, Plaintiffs proceeded with their suit. (Id.)

Ultimately, all interested parties agreed to resolve the underlying suit. (Id.) As part of that agreement, Defendant and Mr. Hopkins stipulated to an uncontested judgment against Mr. Hopkins for the amount of $1.2 million. (Id.) To satisfy the judgment, Mr. Hopkins agreed to assign any claim he might have against Defendant to Plaintiffs. (Id.) Based on that assignment, Plaintiffs filed suit against Defendant in the Superior Court of Chatham County. (Doc. 1, Attach. 1.) Pursuant to 28 U.S.C.

§ 1332, Defendant invoked this Court's diversity jurisdiction and removed the case to this Court. (Id.) In their complaint, Plaintiffs allege that Defendant is liable for "negligently, carelessly, unreasonably, foolishly, stubbornly litigiously, or in bad faith failing or refusing to settle the Linthicums' claim for the wrongful death of their child within the applicable limits of the Mendakota policy." (Id. ¶ 80.)

In its Motion for Summary Judgment, Defendant argues that, as a matter of law, its actions do not amount to a bad faith refusal to settle because it tendered the policy limits to settle Plaintiffs' claims against Mr. Hopkins. (Doc 49, Attach. 1 at 8-13.) With respect to Plaintiffs' May 2010 demand, Defendant contends that it was not obligated to respond to that demand because it requested the policy limits, but did not offer to settle all potential claims against Mr. Hopkins. (Id. at 13-14.) According to Defendant, the May 2010 demand left Mr. Hopkins exposed to claims for pain and suffering brought on behalf of the decedent's estate based on the one hour Plaintiffs' son survived following the accident. (Id.)

Plaintiffs generally maintain that Defendant's failure to timely respond to their May 2010 demand is a bad-faith refusal to settle, regardless of whether the settlement terms resolved all potential claims against Mr. Hopkins. (Doc. 51 at 13-24.)

**ANALYSIS**

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one

7

inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

In Georgia, an insurance company that refuses to settle a personal injury claim against its insured due to bad-faith or negligence may be liable for the excess judgment. Cotton States Mut. Ins. Co. v. Brightman, 276 Ga. 683, 684, 580 S.E.2d 519, 521 (2003). This situation arises when an insurer places its interest above the interests of its insured. Thomas v. Atlanta Cas. Co., 253 Ga. App. 199, 204-05, 558 S.E.2d 432, 439 (2001). The insurer's actions are "[j]udged by the standard of the ordinarily prudent insurer." Cotton States, 276 Ga. at 685, 580 S.E.2d at 521. While "[a]n insurance company does not act in bad faith solely because it fails to accept a settlement offer," S. Gen Ins. Co. v. Holt, 262 Ga. 267, 269, 416 S.E.2d 274, 276 (1992), "the insurer 'must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim.' " Baker v. Huff, 323 Ga. App. 357, 363, 747 S.E.2d 1, 6 (2013) (quoting U.S. Fid. & Guar. Co. v. Evans, 116 Ga. App. 93, 94-95, 156 S.E.2d 809, 811 (1967)).

Generally, an insurer owes a duty to its insured of timely responding to a plaintiff's offer to settle a personal injury claim within the policy limits if the insurer knows the insured is clearly liable and special damages will exceed the policy limits. Id. at 364, 747 S.E.2d at 7. (quoting Brightman, 276 Ga. at 685, 580 S.E.2d at 521). However, an insurer has no duty to respond to an offer that fails to fully settle the claims against its insured within the policy limits. Id. at 365, 747 S.E.2d at 7 (citing Holt, 262 Ga. 267, 416 S.E.2d 274). In this respect, an offer to settle a claim for pain and suffering, but not wrongful death, is "not an offer to fully settle a claim within the policy limits to which [the insurer has] a duty to respond." Id.

In this case, Defendant quickly offered to tender the policy limits to settle Plaintiffs' claims against Mr. Hopkins. In response, Plaintiffs elected to wait approximately nineteen months to respond to that offer by sending a demand for the policy limits. Plaintiffs' response was effectively a counter-offer to accept the policy limits in exchange for settling only Plaintiffs' claim for wrongful death. Under Baker, Plaintiffs' demand was not one that would fully settle Plaintiffs' claims against Mr. Hopkins. Therefore, Defendant was under no

9

obligation to either accept or respond to Plaintiffs' demand. In short, there are insufficient facts "to permit a jury to find that no ordinarily prudent insurer would have declined to accept [Plaintiffs'] offer." Id. at 363; 747 S.E.2d at 6. Accordingly, Defendant is entitled to summary judgment.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 49) is **GRANTED** and Plaintiffs' Motion for Partial Summary Judgment (Doc. 51) is **DENIED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 22ND day of September 2016.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA